**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BURBERRY LIMITED and
BURBERRY LIMITED,

          Plaintiffs,

    v.

JOHN DOE 1 A/K/A QIAO RENFENG A/KA QIU
YANYANG A/K/A LIN RUI A/K/A CHEN DERONG A/K/A
XUE BINXUAN A/K/A YONGBO LI A/K/A XIAO
JINGJING A/K/A JIANG AI A/K/A XUZHEYE XUZHEYE
A/K/A XU ZHEYE A/K/A ZHOUMINMIN A/K/A ZHAO LI
A/K/A ZHENG LINTIAN A/K/A LINTIAN ZHENG A/K/A
CHEN CHENG A/K/A YANG CHENG A/K/A HUANG
YAYAN A/K/A WU JINGQING A/K/A WU WU A/K/A
ZHANG LILI A/K/A CHEN MINXIA A/K/A LINXICHUN
A/K/A XICHUN LIN A/K/A XUZIMI A/K/A XU ZIMI A/K/A
HUANG BOMING A/K/A LIU GUOREN; JOHN DOE 2
A/K/A LIUQING WU A/K/A/ WU LIUQING; JOHN DOE 3
A/K/A HONGPUYI A/K/A WANGHAO A/K/A LIUTAO
A/K/A LIMEI XIAO A/K/A XIAOLIMEI; JOHN DOE 4
A/K/A CHEN XUE A/K/A CHEN DAI A/K/A CHEN DAIL
A/K/A CHEN JUN YONG A/K/A CHEN XUEFENG; JOHN
DOE 5 A/K/A WANG ZHENGLEI A/K/A SUN XIAN
SHENG A/K/A XIANGSHENG WANG A/K/A WANG
ZHENG LEI A/K/A ZHENGLEI WANG A/K/A ZHENG
WANG A/K/A WANG XIAN SHENG; JOHN DOE 6 A/K/A
HUANGMINJUN A/K/A WU LONGQI A/K/A LUO TINGFEI
A/K/A QINFAN; JOHN DOE 7; JOHN DOE 8 A/K/A
CHENQI A/K/A QI CHEN A/K/A JONE SMITH A/K/A LIN
LIN A/K/A FJC004 A/K/A LE LE A/K/A JAMES D. HILL;
JOHN DOE 9 A/K/A REN XIAOQING A/K/A XIAOQING
REN A/K/A SUMMER A/K/A BUSINESS A/K/A AMY
SMITH A/K/A XIONG TENG A/K/A XIONTENG A/K/A
MIKE WANG A/K/A HE QIAN A/K/A DUOSIYIBEI A/K/A
ANNIE HE; JOHN DOE 10 A/K/A JUNGLE KOO; JOHN
DOE 11 A/K/A CHEN YIFAN A/K/A ZHANG SHI A/K/A LI
CHANG A/K/A PENG PENG A/K/A WAN SAN SAN A/K/A
MENG XIANG A/K/A GAN PING A/K/A FANG PING
A/K/A CHEN ZHEN A/K/A KAI SHA A/K/A WANG BIN
BIN A/K/A PING PING A/K/A LI MEIMEI A/K/A XU
WANG A/K/A PING JIN A/K/A XUE JI MING A/K/A
BOSER BOSET A/K/A WANG JIANG A/K/A WER ERW;
JOHN DOE 12 A/K/A CHEN GUOPENG A/K/A GUOPENG
CHEN; JOHN DOE 13 A/K/A WANGZHIQIANG A/K/A

Civil Action

No. 12 Civ. 0479

**JUDGE GRIESA**

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS'
MOTION FOR ENTRY OF
DEFAULT JUDGMENT AGAINST
ALL DEFENDANTS**

YANG A/K/A ANDY A/K/A ONLY A/K/A LIURUOLAN;          :
JOHN DOE 14 A/K/A WAN ZHENCAI A/K/A HUANG YAN        :
A/K/A HUANG YAN JIN A/K/A YU MEI ZHANG A/K/A         :
YANG WEN XUE; XYZ COMPANIES, AND JOHN DOES           :
15-100,                                             :
                      Defendants.                         :
                                                                 :

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF
<u>DEFAULT JUDGMENT AGAINST ALL DEFENDANTS</u>**

Joseph C. Gioconda (JG4716)
Jonathan A. Malki (JM4410)
Kristin Lia (KL7394)
THE GIOCONDA LAW GROUP PLLC
One Penn Plaza, 36th Floor
New York, New York 10119-0002
Telephone: (212) 786-7549
Facsimile: (888) 697-9665
Joseph.Gioconda@GiocondaLaw.com

Bell Plaza, Suite 607
42-40 Bell Boulevard
Bayside, NY 11361
Telephone: (718) 423-3610

Joseph.Gioconda@GiocondaLaw.com

Attorneys for Plaintiffs

BURBERRY LIMITED and
BURBERRY LIMITED

## TABLE OF CONTENTS

I. **INTRODUCTION** ........................................................................................................... 1

II. **FACTUAL BACKGROUND** ......................................................................................... 2

III. **ARGUMENT** ................................................................................................................... 4

    A. BURBERRY IS ENTITLED TO A DEFAULT JUDGMENT AGAINST ALL DEFENDANTS ....................................................................................................................... 4

        1. *The Defendants' Failure to Appear Justifies the Entry of a Default Judgment* ............... 4

        2. *The Defendants' Willful Violation of the Plaintiffs' Rights in the Burberry Trademarks Justifies an Award of Enhanced Statutory Damages* ............................................................. 5

        3. *The Defendants' Willful Infringement of the Burberry Trademarks Merits an Assessment of Statutory Damages and Attorneys' Fees in a Combined Amount Not Less than One Hundred Eighty Million Dollars ($180,000,000)* .................................................... 8

        4. *The Plaintiffs are Further Entitled to Permanent Injunctive Relief* ............................. 13

IV. **CONCLUSION** ............................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Brown v. Gabbidon,*
No. 06 Civ. 8148 (HB), 2007 WL 1423788 (S.D.N.Y. May 14, 2007)........................................ 5

*Burberry Ltd. (UK), et al. v. Burberry-Scarves.com, et al.,*
10 Civ. 9240 (TPG) (S.D.N.Y. May 5, 2011)........................................................................... 10

*Burberry Ltd. v. Euro Moda, Inc.,*
No. 08 Civ. 5781 (CM), 2009 WL 1675080 (S.D.N.Y. June 10, 2009)...................................... 9

*Church & Dwight Co., Inc. v. Kaloti Enterprises of Michigan, L.L.C.,*
697 F.Supp.2d 287 (S.D.N.Y. 2009) ...................................................................................... 12

*Coach, Inc. v. O'Brien,*
10 Civ. 6071 (JPO) (JLC), 2011 WL 6122265 (S.D.N.Y. Nov. 28, 2011) ........................... 13-14

*eBay Inc. v. MercExchange, LLC,*
547 U.S. 388 (2006)............................................................................................................... 13

*Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.,*
807 F.2d 1110 (2d Cir. 1986)................................................................................................... 8

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.,*
315 F.Supp.2d 511 (S.D.N.Y. 2004) ........................................................................................ 8

*Gucci Am., Inc. v. MyReplicaHandbag.com,*
No. 07 Civ. 2438 (JGK), 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ................................. 8, 11

*Gucci Am., Inc. v. Tyrrell-Miller,*
678 F.Supp.2d 117 (S.D.N.Y. 2008) ...................................................................................... 13

*Guess?, Inc. v. Gold Center Jewelry,*
997 F.Supp. 409 (S.D.N.Y. 1998) ............................................................................................ 6

*Hermès Intern. v. Kiernan,*
No. CV 06-3605 (LDW) (WDW), 2008 WL 4163208 (E.D.N.Y. Aug. 28, 2008)....................... 5

*KepnerTregoe, Inc. v. Vroom,*
186 F.3d 283 (2d Cir. 1999)) ................................................................................................... 5

*Louis Vuitton Malletier & Oakley, Inc. v. Veit,*
211 F.Supp.2d 567 (E.D.Pa. 2002) ...................................................................................... 8-9

*Malletier v. Carducci Leather Fashions, Inc.,*
648 F.Supp.2d 501 (S.D.N.Y. 2009) ........................................................................ 6

*Marks Org., Inc. v. Joles,*
784 F.Supp.2d 322 (S.D.N.Y. 2011) ........................................................................ 14

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,*
704 F.Supp.2d 305 (S.D.N.Y. 2011) ........................................................................ 14

*Nike, Inc. v. Top Brand Co.,*
No. 00 Civ. 8179 (KMW) (RLE), 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006) .................. 8, 11

*Nike, Inc. v. Top Brand Co.,*
No. 00 Civ. 8179 (KMW) (RLE), 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006) ........................ 8

*Philip Morris USA Inc. v. A&V Minimarket Inc.,*
592 F.Supp.2d 669 (S.D.N.Y. 2009) ........................................................................ 10

*Rolex Watch U.S.A., Inc. v. Jones,*
No. 99 Civ. 2359 (DLC) (FM),  2002 WL 596354 (S.D.N.Y. Apr. 17, 2002) ........................ 7, 9

*Rolls-Royce PLC v. Rolls-Royce USA, Inc.,*
688 F.Supp.2d 150 (E.D.N.Y. 2010) ........................................................................ 9

*Sara Lee Corp. v. Bags of New York, Inc.,*
36 F.Supp.2d 161 (S.D.N.Y. 1999) ........................................................................ 7, 10

*The North Face Apparel Corp. et al. v. Fujian Sharing Import & Export Ltd. Co. et al.,*
No. 10 Civ. 1630 (S.D.N.Y. Sept. 13, 2010) .............................................................. 11

*Tiffany (NJ) Inc. v. Luban,*
282 F.Supp.2d 123 (S.D.N.Y. 2003) ........................................................................ 6

*Tory Burch LLC, et al. v. Yong Sheng Int'l Trade Co., et al.,*
No. 10 Civ. 9336 (SAB) (S.D.N.Y. May 13, 2011) ...................................................... 11

*Victorinox AG v. U.S. Flash & Technologies LLC,*
No. 09 Civ. 9266 (RJH) (FM), 2010 WL 5691991 (S.D.N.Y. Oct. 21, 2010) ........................ 12


Statutes

15 U.S.C. § 1116(a). .............................................................................................. 13
15 U.S.C. § 1116(d). .............................................................................................. 2
15 U.S.C. § 1117 .................................................................................................. 4
15 U.S.C. § 1117(a) .............................................................................................. 12
15 U.S.C. § 1117(c) .............................................................................................. 5
15 U.S.C. § 1117(c)(1)........................................................................................... 5

15 U.S.C. § 1117(c)(2) ................................................................................................. 5-6, 11

Other Authorities

S.Rep. No. 177, 104th Cong., 2d Sess. (1995) ............................................................ 6

Rules

FED. R. CIV. P. 12(a)(1)(A), .......................................................................................... 1
FED. R. CIV. P. 54(c) ...................................................................................................... 4
FED. R. CIV. P. 55(a) ...................................................................................................... 4
FED. R. CIV. P. 55(b)(2) .......................................................................................... 1, 4, 12
LOCAL CIVIL RULE 55.2(b) ............................................................................................ 1

## I.       INTRODUCTION

Plaintiffs Burberry Limited (US) and Burberry Limited (UK) (collectively "Burberry" or the "Plaintiffs") submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2(b), for a default judgment against the Defendants named in the related cases *Burberry Limited (US), et al. v. John Doe 1, et al.*, 11 Civ. 08306 (TPG) ("*Burberry II*") (filed November 16, 2011) and *Burberry Limited, et al. v. John Doe 1, et al.*, 12 Civ. 0479 (TPG) ("*Burberry III*") (filed January 20, 2012). The Court accepted *Burberry II* and *Burberry III* as related on the Plaintiffs' motion on January 24, 2012. Both *Burberry II* and *Burberry III* concern Burberry's allegation that a large number of individuals and entities are responsible for operating a widespread and dynamic network of Internet websites selling and promoting counterfeit "Burberry"-branded goods.

The *Burberry II* Defendants were served with the Plaintiffs' Complaint and all related papers (the "*Burberry II* Complaint," or "*Burberry II* Compl.") (Docket No. 1) as of November 25, 2011. *See* Affidavit of Service (Docket No. 8) (entered December 1, 2011). Likewise, the *Burberry III* Defendants were served with the Plaintiffs' Complaint and all related papers (the "*Burberry III* Complaint," or "*Burberry III* Compl.") (Docket No. 1) by January 30, 2012. *See* Affidavit of Service (Docket No. 6) (entered February 1, 2012). Pursuant to FED. R. CIV. P. 12(a)(1)(A), the Defendants' deadline to answer the *Burberry II* Complaint was December 16, 2011, while the Defendants' deadline to answer the *Burberry III* Complaint was February 20, 2012. As of today, no Defendant has answered, nor has any Defendant requested an extension of time in which to answer, nor has any Defendant made any attempt whatsoever to contact Burberry, Burberry's counsel, or the Court.

In addition, the Court has entered Temporary Restraining Orders, Seizure Orders, Asset Restraining Orders, Domain Name Transfer Orders, Orders for Expedited Discovery, Orders

Permitting Service by Electronic Mail, and Orders to Show Cause for a Preliminary Injunction (the "TROs") against the *Burberry II* and *Burberry III* Defendants (on November 16, 2011 [Docket No. 4] and January 23, 2012 [Docket No. 4] respectively). (The TROs were served by electronic mail, as ordered by the Court, on all of the Defendants along with the complaints and other related papers, as reflected in the affidavits of service entered in both matters and noted above.) The Court ordered the *Burberry II* Defendants to appear to show cause on December 1, 2011 why a Preliminary Injunction should not be entered pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116(d). Likewise, the Court ordered the *Burberry III* Defendants to appear on February 9, 2012 for the same purpose. None of the Defendants so appeared. As a result, the Court converted the TROs into Preliminary Injunctions (on December 1, 2011 [Docket No. 7] and February 9, 2012 [Docket No. 7] respectively) (the "Preliminary Injunctions"). The Preliminary Injunctions, which largely continue the restrictions articulated in the TROs, remain in force pending the outcome of the two matters.

In light of the Defendants' failure to answer and their continued operation of their networks of infringing online stores in willful violation of this Courts' orders, the Plaintiffs respectfully ask the Court to enter a default judgment against each of the Defendants.

## II.    FACTUAL BACKGROUND

*Burberry II* and *Burberry III* are based on common facts, which are more fully set forth in the complaints (the "*Burberry* Complaints" or "Compls at __") TROs, and Preliminary Injunctions.[1] Collectively, the Defendants are responsible for operating a dynamic, sophisticated, and ever expanding counterfeiting network consisting of a massive number of essentially interchangeable online stores (the "Infringing Websites"). The foundation of the Defendants'

---

[1] The Plaintiffs hereby incorporate the *Burberry* Complaints, TROs, and Preliminary Injunctions by reference.

counterfeiting networks consists of at least two hundred and thirty-six (236) domain names incorporating the famous BURBERRY® trademark or a confusingly similar variant thereof (the "Infringing Domain Names"), which the Defendants use in conjunction with the Infringing Websites in order to falsely convey to consumers that the online stores are legitimate retailers affiliated with Burberry. In addition, the Defendants have embedded the Plaintiffs' registered trademarks and logos (the "Burberry Trademarks"), as well as Burberry's advertising campaign images, throughout the Infringing Websites in a deliberate attempt to deepen the illusion that the online stores are authorized retailers of Burberry products. Having designed the Infringing Websites to fraudulently convey an association with Burberry, the Defendants use the Infringing Websites to sell hundreds of shoddy replicas of the Plaintiffs' high quality luxury goods, including handbags, scarves, shoes, wallets, belts, ties, outerwear, sunglasses, and watches, each of which bear multiple counterfeit reproductions of the Burberry Trademarks (the "Counterfeit Products").

Among the preliminary restrictions imposed by this Court, the Defendants were ordered to immediately refrain from "[u]sing any simulation, reproduction, counterfeit, copy, or colorable imitation of the Burberry Trademarks … for and in connection with any goods or their packaging…." Moreover, the TROs and Preliminary Injunctions order the Defendants to cease "[u]sing, linking, transferring, selling, exercising control over, or otherwise owning the Infringing Domain Names, or any other domain name that incorporates, in whole or in part, any of the Burberry Trademarks." However, the Defendants ignored the Court's orders, and, as a result, Burberry has had to rely exclusively on the compliance of third party Internet registries and registrars in order to ensure that the Defendants' Infringing Domain Names and Infringing

Websites have been disabled and made inaccessible when queried by an Internet browser, as ordered in the TROs and Preliminary Injunctions.

In short, the Defendants have failed to appear in any capacity, have acted with utter disdain for this Court's authority, and have forced Burberry and the Court to rely on the assistance of third parties in order to curtail the Defendants' rampant infringement.

## III.    ARGUMENT

### A.    BURBERRY IS ENTITLED TO A DEFAULT JUDGMENT AGAINST ALL DEFENDANTS

#### 1.    *The Defendants' Failure to Appear Justifies the Entry of a Default Judgment*

Under FED. R. CIV. P. 55(a) "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." In addition, FED. R. CIV. P. 55(b)(2) provides that the Court may enter a default judgment without any further notice to a defendant that fails to appear.

Moreover, FED. R. CIV. P. 54(c) requires that "[a] default judgment must not differ in kind from, or exceed in amount what is demanded in the pleadings." The prayers for relief in the *Burberry* Complaints include requests that this Court assess enhanced statutory damages for willful trademark counterfeiting, as well as for costs of suit, including attorneys' fees and costs under 15 U.S.C. § 1117. Compls. at ¶¶ 6-8. In addition, the *Burberry* Complaints further pray for permanent injunctions enjoining the Defendants from trafficking in Counterfeit Products and ordering such other relief that the Court deems necessary and appropriate to ameliorate the consumer confusion caused by the Defendants' online counterfeiting network. Compls. at ¶¶ 2-5.

As stated above, no Defendant has appeared in this matter, nor has any Defendant raised any objection or defense of any kind, despite the fact that they were properly and verifiably

served by electronic mail, per the Court's orders. Therefore, given their failure to counter Burberry's well-pled allegations of willful trademark counterfeiting, infringement, cybersquatting, and unfair competition, the Plaintiffs respectfully request that this Court enter an immediate default judgment against all Defendants and award to the Plaintiffs all the relief sought in the *Burberry* Complaints. *See Brown v. Gabbidon*, No. 06 Civ. 8148 (HB), 2007 WL 1423788, at *2 (S.D.N.Y. May 14, 2007) ("[i]n considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true….").

2.     *The Defendants' Willful Violation of the Plaintiffs' Rights in the Burberry Trademarks Justifies an Award of Enhanced Statutory Damages*

The Lanham Act makes statutory damages available at the plaintiff's election at any time prior to the entry of final judgment, where a defendant has made "use of a counterfeit mark … in connection with the sale, offering for sale, or distribution of goods or services…." 15 U.S.C. § 1117(c). While the precise amount of statutory damages imposed is committed to judicial discretion, the statute prescribes that a minimum of $1,000 and maximum of $200,000 shall be assessed "per counterfeit mark per type of goods or services sold, offered for sale, or distributed…." 15 U.S.C. § 1117(c)(1). However, when confronted with incidents of willful counterfeiting, a court may assess statutory damages of up to $2,000,000 "per counterfeit mark per type of goods.…" 15 U.S.C. § 1117(c)(2).

The Defendants here have acted with the unmistakable intent to infringe the Burberry Trademarks and to both cause and profit from consumer confusion. *See Hermès Intern. v. Kiernan*, No. CV 06-3605 (LDW) (WDW), 2008 WL 4163208 at *3 (E.D.N.Y. Aug. 28, 2008) (quoting *KepnerTregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999)) ("[i]nfringement is willful when 'the defendant had knowledge that [the] conduct represented infringement or perhaps recklessly disregarded the possibility [that the conduct infringed].'"). There can be no

dispute that the Defendants knew that their creation and operation of their network of Infringing Websites and sale of Counterfeit Products grossly misappropriated the Burberry Trademarks in total violation of Burberry's rights.

Willfulness may also be inferred by reason of a defendant's default. *See, e.g., Malletier v. Carducci Leather Fashions, Inc.*, 648 F.Supp.2d. 501, 504 (S.D.N.Y. 2009) ("[h]ere, by virtue of its default, [the defendant] admitted Louis Vuitton's allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to Louis Vuitton's rights."); *see also Tiffany (NJ) Inc. v. Luban*, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003) ("[b]y virtue of the default, [defendants'] trademark infringement is deemed willful…."). Accordingly, the Court may find that the Defendants acted willfully based on their failure to appear before this Court to even attempt to dispute Burberry's allegations. Therefore, the Defendants' counterfeiting should be considered willful and subject to the maximum damages prescribed by 15 U.S.C. § 1117(c)(2).

Furthermore, the Defendants' conduct in this matter is of the kind that Congress attempted to address by providing for statutory damages generally, as well as for substantially greater penalties for willful counterfeiting. First, counterfeiters typically frustrate any effort to discern plaintiffs' actual damages by failing to keep adequate business records. *See, e.g., Guess?, Inc. v. Gold Center Jewelry*, 997 F.Supp. 409, 411 (S.D.N.Y. 1998) ([Congress's decision to make statutory damages available as an alternative to actual damages] "'reflected a harsh reality—counterfeiters often do not keep or secrete records of their unlawful activities, thus making proof of the extent of the plaintiff's injury or the counterfeiters' profits impossible as a practical matter.'") (quoting S.Rep. No. 177, 104th Cong., 2d Sess. (1995)).

More salient still is the fact that even if the Defendants did maintain business records sufficient to show their sales of and profits from Counterfeit Products, their failure to appear and

to participate in fact discovery deprives the Plaintiffs and this Court of the opportunity to determine Burberry's actual harm, further justifying the imposition of statutory damages. *See, e.g., Sara Lee Corp. v. Bags of New York, Inc.*, 36 F.Supp.2d 161, 165 (S.D.N.Y. 1999) ("[s]tatutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain.").

Enhanced statutory damages for willfulness are meant not only to compensate trademark owners for their actual damages but also to deter deliberate counterfeiting by severely punishing infringers. *See id.* at 167 ([statutory damages for infringement in trademark as well as copyright] "may be punitive as necessary to deter the defendants, to deter others, and to redress wrongful litigation conduct."); *see also Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359 (DLC) (FM), 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (where "a defendant is shown to have acted willfully … statutory damages should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others."). Therefore, both the global scope of the Defendants' counterfeiting network and their accumulation of hundreds of Infringing Domain Names amply justify the imposition of harshly punitive statutory damages.

Accordingly, because they knowingly infringed Burberry's federally registered marks, declined to answer the *Burberry* Complaints or otherwise appear before the Court, thwarted the Plaintiffs' ability to account for their unlawful profits by failing to comply with the Court's orders requiring them to immediately provide the Plaintiffs with records related to their counterfeiting operations (and have given no indication that they will participate in fact discovery), and due to the propriety of imposing severely punitive measures, the Defendants' conduct should be subject to enhanced statutory damages for willful counterfeiting.

3.    *The Defendants' Willful Infringement of the Burberry Trademarks Merits an Assessment of Statutory Damages and Attorneys' Fees in a Combined Amount Not Less than One Hundred Eighty Million Dollars ($180,000,000)*

Taken together, Burberry's prayers for relief in *Burberry II* and *Burberry III* respectfully request that this Court assess combined statutory damages of not less than one hundred eighty million dollars ($180,000,000.00) against the Defendants. This assessment is justified not only by the Defendants' willfulness, but also the massive scale of their counterfeiting scheme, which harms both Burberry and the public, and their utter disregard for this Court's authority. *See Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179 (KMW) (RLE), 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006), *adopted in full by* 2006 WL 2884437, at *2 (S.D.N.Y. Oct. 6, 2006) ("the size of the defendants' infringing operations … the willfulness of their conduct, and their behavior in this litigation all weigh towards a grant of the maximum in statutory damages.").

A district court is "only limited by what [it] considers just" in meting out statutory damages against defendants that engage in counterfeiting. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004) (quoting *Louis Vuitton Malletier & Oakley, Inc. v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa. 2002)). However, several courts have drawn an analogy from cases interpreting similar provisions of the U.S. Copyright Act to inform their calculations of statutory damages for trademark counterfeiting:

> [C]ourts look to factors such as: (1) 'the expenses saved and the profits reaped;' (2) 'the revenues lost by the plaintiff;' (3) 'the value of the copyright;' (4) 'the deterrent effect on others besides the defendant;' (5) 'whether the defendant's conduct was innocent or willful;' (6) 'whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;' and (7) 'the potential for discouraging the defendant.'

*Gucci Am., Inc. v. MyReplicaHandbag.com*, No. 07 Civ. 2438 (JGK), 2008 WL 512789, at *2 (S.D.N.Y. Feb. 26, 2008) (*quoting Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986).

The enumerated factors cut decisively against the Defendants in this matter. As established, the Defendants' conduct here was unmistakably willful. In addition, the Plaintiffs have shown that the Burberry Trademarks, in use for more than eighty years, have built up enormous goodwill and are extremely valuable in the market for luxury goods. *See Burberry II* Compl. at ¶¶ 23-29; *see also Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781 (CM), 2009 WL 1675080, at *12 (S.D.N.Y. June 10, 2009) (the Burberry Trademarks "are strong marks that have been used to identify the Burberry brand for several decades and are synonymous with the Burberry brand.").

Although the Defendants' failure to appear prevents the Plaintiffs and the Court from discovering the Defendants' profits and expenses, the Defendants clearly benefit from the fact that consumers anywhere in the world can access the Infringing Websites, leading to increased sales. *See Louis Vuitton Malletier & Oakley Inc.*, 211 F.Supp.2d at 584 ("[w]hile the record contains no evidence of the actual scope of the defendants' sales … given the scope of the Internet supermarket, *such sales offerings are presumptively quite high*….") (emphasis added); *see also, Rolex Watch U.S.A., Inc.*, 2002 WL 596354, at *5 (recommending increased statutory damages in part because of "the virtually limitless number of customers available" to the defendant over the Internet). While it is similarly impossible to precisely calculate Burberry's actual losses here, the unlawful sale of Counterfeit Products has undoubtedly harmed its revenues, as the Defendants have profited from consumer confusion that they themselves created. *See, e.g., Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F.Supp.2d 150, 158 (E.D.N.Y. 2010) (remarking that plaintiffs incur greater harm where counterfeiters traffic in "primarily the same type of goods or products" as their genuine offerings).

In any event, the Defendants should not benefit from their failure to participate in this litigation, and the damages assessed against them should reflect the fact that they neglected to introduce proof mitigating the relief to which the Plaintiffs are entitled. *See Sara Lee Corp.*, 36 F.Supp.2d at 169 ("[t]he Second Circuit instructs us that in determining infringement damages, courts are to resolve against the defendants any factual uncertainties … when the defendants left the uncertainty by not responding to the evidence of counterfeit sales with evidence of their own."); *see also Philip Morris USA Inc. v. A&V Minimarket Inc.*, 592 F.Supp.2d 669, 674 (S.D.N.Y. 2009) ("the defendants' failure to respond … has left the Court with no information as to any of the factors relating to the defendants' circumstances. Thus the Court draws every reasonable inference on these points against the defendants.").

Furthermore, the damages Burberry prays for in these matters is wholly in line with those assessed by this Court in an effectively identical case, *Burberry Limited (UK), et al. v. Burberry-Scarves.com, et al.* ("*Burberry I*"). In that matter, which was grounded in essentially identical facts and in which the Defendants similarly ignored this Court's orders and failed to answer or appear, this Court properly assessed statutory damages in the amount of $60,000,000. *Burberry Limited (UK), et al. v. Burberry-Scarves.com, et al.*, 10 Civ. 9240 (TPG) (S.D.N.Y.) (Docket No. 20) (Default Judgment and Permanent Injunction, May 5, 2011). All that distinguishes these related matters from *Burberry I* is the greater number of Infringing Domain Names that the instant Defendants are known to have registered.[2]

Likewise, courts in the Southern District of New York have awarded similar amounts in several other near-identical matters, including those with far fewer marks at issue. *See, e.g.*, *The*

---

[2] When it moved for a default judgment in *Burberry I*, the Plaintiffs had discovered and brought to the Court's attention a total of 40 Infringing Domain Names. By contrast, to date Burberry has catalogued at least 236 Infringing Domain Names registered by the *Burberry II* and *III* Defendants.

*North Face Apparel Corp. et al. v. Fujian Sharing Import & Export Ltd. Co. et al.*, No. 10 Civ. 1630 (AKH) (S.D.N.Y.) (Docket No. 29) (Default Judgment and Permanent Injunction, Sept. 13, 2010) (awarding statutory damages of $78,000,000); *Tory Burch LLC, et al. v. Yong Sheng Int'l Trade Co., et al.*, No. 10 Civ. 9336 (SAB) (S.D.N.Y.) (Docket No. 29) (Default Judgment and Permanent Injunction Order, May 13, 2011) (assessing maximum statutory damages of $2,000,000 per each of the plaintiff's two infringed marks against each of the Defendants, for a total of $164,000,000). In light of the even greater number of Infringing Domain Names and infringed marks at issue in these related matters, a similar assessment of statutory damages against the Defendants would be appropriate.

Taking all the foregoing into account, a calculation of statutory damages totaling at least $180,000,000 is reasonable. As noted above, the Lanham Act permits courts to assess liability of up to $2,000,000 per counterfeit mark per type of goods sold against willful infringers. Thus, the key inquiry in calculating statutory damages is the manner in which a court defines discrete categories of goods sold. *See, e.g., Gucci Am., Inc.*, 2008 WL 512789, at *4 (salient "legal question" is the definition of "'types of goods' for the purpose of measuring damages within the meaning of 15 U.S.C. § 1117(c)(2)."). In general, goods are divided into distinct "types" for purposes of calculating damages "based on the functional purpose of the product." *See id.* (allocating counterfeit goods into several functional categories, but distinguishing, for example, between "handbags," "wallets," and "handbag and wallet sets"); *see also Nike, Inc.*, 2006 WL 2946472, at *3 (distinguishing between "t-shirts, fleece sweatshirts, and polo shirts").

An examination of even just the few screenshots of the Infringing Websites that the Plaintiffs attached to the *Burberry* Complaints reveals that collectively the ***Defendants sold and offered for sale at least twenty-two (22) distinct types of Counterfeit Products, each bearing***

*multiple infringing duplications of the twenty-three registered marks comprising the Burberry Trademarks*, including: scarves, handbags, wallets, t-shirts, dresses, hoodies, belts, ties, coats, jackets, jeans and trousers, shirts, shoes and boots, watches, jewelry, sunglasses, hats and caps, suits, swimsuits, sweaters, makeup and beauty products, and fragrances. *See Burberry II* Compl., Exh. 3A-3M; *Burberry III* Compl., Exh. 3A-3O. While their refusal to participate in this litigation prevents an exact calculation of the Defendants' liability under this rubric, even a conservative estimate of the various types of goods sold and the number of Burberry Trademarks infringed would result in damages far in excess of the amount that Plaintiffs have requested.

Finally, 15 U.S.C. § 1117(a) permits courts to award plaintiffs their reasonable attorneys' fees and costs incurred in "exceptional cases." Several courts have held that cases of willful counterfeiting are "exceptional" within the meaning of the Lanham Act. *See, e.g., Church & Dwight Co., Inc. v. Kaloti Enterprises of Michigan, L.L.C.*, 697 F.Supp.2d 287, 293 (S.D.N.Y. 2009) ("most courts have found both [attorneys' fees and statutory damages] appropriate in the 'exceptional case' of willful infringement."). Rather than request an additional award of fees, however, the Plaintiffs respectfully request that their reasonable attorneys' fees and costs be considered in the Court's calculation of statutory damages. *See, e.g., Victorinox AG v. U.S. Flash & Technologies LLC*, No. 09 Civ. 9266 (RJH) (FM), 2010 WL 5691991, at *4 (S.D.N.Y. Oct. 21, 2010) ("recommending a lump sum intended to compensate Victorinox not only for its statutory damages but also for its fees and costs is an … appropriate course of action here.").

Thus, in light of the vast array of types of goods sold and large number of Burberry Trademarks willfully infringed, the Defendants' failure to participate in the litigation, and the public and private interests served by aggressively deterring counterfeiting, the Plaintiffs respectfully request this Court to exercise its authority under FED. R. CIV. P. 55(b)(2) to enter a

default judgment against all Defendants, and to assess statutory damages, attorneys' fees, and

costs in an amount not less than eighty million dollars ($80,000,000) against the *Burberry II*

Defendants, and at least one hundred million dollars ($100,000,000) against the *Burberry III*

Defendants, for a total assessment of not less than one hundred eighty million dollars

($180,000,000). *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F.Supp.2d 117, 122-23 (S.D.N.Y.

2008) (Sullivan, J.) (assessing statutory damages of $3,000,000 for willful infringement of

fifteen marks against a defendant engaged in selling counterfeit handbags on a single website,

and holding that in light of the defendant's refusal to appear and to provide records, substantial

statutory damages even exceeding the amount sought by the plaintiffs "is appropriate to

accomplish the dual goals of compensation and deterrence, and in particular, to emphasize that

the trademark laws and court proceedings are not mere incidental costs to doing business in the

profitable counterfeit trade.").

4.      *The Plaintiffs are Further Entitled to Permanent Injunctive Relief*

In addition to statutory damages, the Lanham Act permits courts to permanently enjoin

trademark infringers and counterfeiters. *See* 15 U.S.C. § 1116(a). In order to secure a permanent

injunction, a plaintiff in the Second Circuit must establish that:

> [it] has actually succeeded on the merits … and that: (1) plaintiff is likely to suffer
> irreparable injury in the absence of an injunction; (2) remedies at law, such as
> monetary damages, are inadequate to compensate plaintiff for that injury; (3) the
> balance of hardships tips in plaintiff's favor; and (4) the public interest would not
> be disserved by the issuance of a [permanent] injunction. *Coach, Inc. v. O'Brien*,
> 10 Civ. 6071 (JPO) (JLC), 2011 WL 6122265, at *12 (S.D.N.Y. Nov. 28, 2011)
> (citing the standard for injunctive relief articulated in *eBay Inc. v. MercExchange,
> LLC*, 547 U.S. 388, 390 (2006)).

Burberry satisfies every element of this multi-factor analysis. In the first instance, by

virtue of the Defendants' default Burberry has succeeded on the merits of its multiple

infringement claims. *See Coach, Inc.*, 2011 WL 6122265, at *12. ("[defendant's] default constitutes an admission of liability as to the trademark infringement claim….").

The Defendants' sale of Counterfeit Products causes Burberry irreparable harm, by a) necessarily causing confusion among consumers, and b) undermining Burberry's ability to control its reputation and threatening the good will it has established in the Burberry Trademarks. *See, e.g., Marks Organization, Inc. v. Joles*, 784 F.Supp.2d 322, 334-35 (S.D.N.Y. 2011) (confirming that likely consumer confusion "should weigh in favor of finding irreparable injury" and that irreparable injury results from "loss of good will and [a party's] loss of ability to control its reputation."). Such harm cannot be precisely calculated or recompensed, and can only be redressed through a grant of injunctive relief. *See, e.g., New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305, 343 (S.D.N.Y. 2011) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark … because loss of control over one's reputation is neither calculable no precisely compensable.") (internal citations omitted).

In addition, the balance of the hardships tilts entirely in Burberry's favor, as the Defendants did not (and, in any event, could not) "[identify] any hardships for the Court to consider." *Coach, Inc.*, 2011 WL 6122265, at *12 (internal citations omitted). Finally, enjoining the Defendants would clearly benefit the public interest, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to good of unknown origin and quality." *New York City Triathlon, LLC*, 704 F.Supp.2d at 344.

Accordingly, the Plaintiffs respectfully request that this Court enter an injunction permanently enjoining and restraining the *Burberry II* and *Burberry III* Defendants and any persons in active concert or participation with them from manufacturing, distributing, delivering,

shipping, importing, exporting, advertising, promoting, offering for sale, or selling any products bearing any of the Burberry Trademarks, or any derivation or colorable imitation thereof, or any mark confusingly similar or likely to dilute or detract from Plaintiffs' marks.

In addition, the Plaintiffs further request that this Court order that the Infringing Websites and Infringing Domain Names be permanently transferred to Burberry.

Finally, Burberry requests that this Court order that those third party financial institutions and merchant payment providers (such as PayPal) who have complied with this Court's orders to sequester any funds held in the Defendants' accounts, transfer all right, title, and interest thereto to Burberry.

## IV.    CONCLUSION

For the all the foregoing reasons, the Plaintiffs respectfully request that this Court grant their motion for a Default Judgment Against All Defendants.


April 9, 2012                                     Respectfully Submitted,


                                                 */s/ Joseph C. Gioconda*
                                                 _____

                                                 Joseph C. Gioconda (JG4716)
                                                 Jonathan A. Malki (JM4410)
                                                 Kristin Lia (KL7394)
                                                 THE GIOCONDA LAW GROUP PLLC
                                                 One Penn Plaza, 36th Floor
                                                 New York, NY 10119-0002
                                                 Telephone: (212) 786-7549
                                                 Facsimile: (888) 697-9665

                                                 Bell Plaza, Suite 607
                                                 42-40 Bell Boulevard
                                                 Bayside, NY 11361
                                                 Telephone: (718) 423-3610

                                                 Joseph.Gioconda@GiocondaLaw.com

                                                 Attorneys for Plaintiffs

                                                 BURBERRY LIMITED and
                                                 BURBERRY LIMITED